IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRUCE A. ESTES,            )
     Plaintiff,          )     Civil Action No. 7:22-cv-277
                   )
v.                   )
                   )
VIRGINIA DEPARTMENT OF   )     By: Elizabeth K. Dillon
CORRECTIONS, *et al.*,       )        United States District Judge
     Defendants.      )

**MEMORANDUM OPINION**

Bruce A. Estes, a Virginia inmate proceeding *pro se*, filed a civil action pursuant to 42 U.S.C. § 1983, one of the latest in a number of lawsuits he has brought alleging violations of his religious rights.  Estes, who is a practicing Orthodox Jew, asserts claims solely for injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*.  His claims challenge certain policies of the Virginia Department of Corrections ("VDOC") regarding limitations on religious clothing, donations of religious items from outside groups (including food for Passover), and tefillin.  (Dkt. No. 1.)  He names eight defendants: six individual defendants sued only in their official capacities, VDOC, and Green Rock Correctional Center ("Green Rock").

Pending before the court is defendants' motion to dismiss, (Dkt. No. 24), in which they seek dismissal of all claims in the amended complaint.  Estes has filed a response in opposition, and the motion is ripe for disposition.

For the reasons discussed herein, the court will grant the motion in part and deny it in part. The court also will grant Estes leave to file a second amended complaint to give him the opportunity to correct the deficiencies identified by the court.

I.  BACKGROUND

Estes's amended complaint asserts that he is a practicing Orthodox Jew and is sincere in his

religious beliefs.  He explains that he has been incarcerated at Green Rock at all relevant times.  He challenges four basic policies or practices.

First, although he is permitted to have and wear a yarmulke (a head covering) and tzitzit (a four-cornered, fringed undergarment) at all times, he is permitted only one of each.  He has requested and been denied the ability to have "at least a second" one of each so he may have a head covering and undergarment that are "clean" and "hygienic."  (Compl. ¶ 13.)  When he made such a request, defendant Morris denied it.

Second, he claims that a policy that disallows donations of food for Passover from outside Jewish organizations interferes with his ability to practice his religion.  Although he acknowledges that VDOC feeds him a diet consistent with his religion during Passover, he states that he needs to supplement his diet at this time and cannot afford to purchase "Kosher for Passover" items from the commissary vendor.  (*Id.* ¶¶ 14–15.)

Third, and related to his second claim, he asserts more generally that he is not permitted to receive donations "of religious items and materials needed in his Jewish religious practices and beliefs."  (*Id.* ¶ 33.)[1]  Aside from donations of food during Passover, however, he does not specify any particular items or materials or how they are needed for him to practice his faith.

Fourth, he explains that his faith requires him to pray daily using tefillin, which defendants describe as a "set of small boxes with leather straps containing scrolls of parchment inscribed with verses from the Torah.  The leather straps are long enough to wrap around" the bicep and forearm several times, with enough leather to then wrap one of the fingers.  (Mem. Supp. Mot. Dismiss 5,

---

[1]  Estes also alleges that individual Muslim inmates are permitted to receive donations of religious items, but he is not, claiming that the policy allows favoritism toward Muslim inmates and discriminates against Jewish inmates.  From this, he concludes that the policy does not serve a compelling interest.  (Compl. ¶¶ 23–24.)  Although this could be liberally construed as an Equal Protection claim, Estes has asserted such claims in the past in other lawsuits, and he does not include such a claim here.  Thus, the court does not construe his amended complaint as including one.

Dkt. No. 25 (citing myjewishlearning.com/article/tefillin-phylacteries).)  VDOC policy, however, treats tefillin as a "communal use item," and an individual inmate is permitted to use it, but not keep it in his possession.  Thus, although tefillin is available to Estes, he alleges that it is "not always available" because it is stored in the watch commander's office and sometimes is not delivered to him.[2]

## II.  DISCUSSION

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are given a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

Defendants' motion points out that Estes has named eight defendants, including VDOC and Green Rock, but they argue that he has failed to describe any personal involvement by any of the individual defendants except defendant Morris.  They thus contend that all claims against the other individual defendants must be dismissed.  They also contend that his claims are subject to dismissal for failure to state a claim under RLUIPA.  (*See generally* Mem. Supp. Mot. Dismiss, Dkt. No. 25.)

---

[2] Estes also worries that he might be transferred to another VDOC facility where he will not have access at all to tefillin.  This is speculation and not a proper basis for a claim at this time.

In his opposition to the motion to dismiss, Estes argues that each individual defendant has personal involvement because each is "responsible for the implementation and application of" VDOC Operating Procedure 841.3, which Estes contends caused a violation of his rights.  (Pl.'s Opp'n to Mot. Dismiss 1, Dkt. No. 27.)  He also clarifies and embellishes upon his allegations concerning how each of the policies affects his religious practice.

For example, with regard to the claim regarding his yarmulke and tzitzit, he notes that laundry is picked up on one day but not returned for days.  It is either picked up on Monday or returned on Friday, or picked up on Thursday and returned the following Tuesday.  Thus, if he were to send his religious clothing to be laundered, he would be without it for four or five days at a time. He notes that hand washing the items is an option, but it still takes "several hours" for the items to dry, "again forcing [him] to modify his behavior and violate [his] core religious beliefs." (*Id.* at 3.) He further points out that VDOC's female inmates are permitted three religious head coverings and hijabs, which he suggests undermines any claim that there is a compelling justification for denying him a second yarmulke or tzitzit.  (*Id.* at 3–4.)

Estes also has filed what he calls a "supplemental declaration."  (Dkt. No. 30.)  In it, he provides additional facts regarding his tefillin claim.  These include that he used to be able to have tefillin in his cell, even during a lockdown, because a former warden allowed it, even though it was technically against VDOC policy.  He states that sometimes the tefillin would remain in his cell for up to ten days, without any problems.  He further  alleges that, on June 9, 2023, he was told that Morris had been consulted and had advised staff not to permit use of the tefillin at all during any lockdown.  Since that time, Estes occasionally has been denied tefillin for up to ten days at a time, which has forced him to modify his religious beliefs and practices.  (*See id.* at 1–2.)

**B.  Personal Involvement**

Defendants maintain that Estes's amended complaint has not alleged sufficient personal

4

involvement by any of the individual defendants, except for Morris, who is alleged to have denied Estes's claim for an additional yarmulke and tzitzit.  The court agrees that the amended complaint lacks detail as to the other five defendants.

Although Estes states in his opposition that the defendants were involved because they were responsible for promulgating or applying the policies he challenges, a plaintiff may not amend his complaint through briefing.  *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013).  Even if the court considered the allegations from his opposition and supplemental declaration, they do not remedy this problem.  He still fails to specify which of the defendants was responsible for which of the challenged policies or decisions, and he still fails to specify which ones would be the proper individual or individuals against whom the court could issue any injunctive relief.  Thus, he has not alleged sufficient facts to state a claim against any of the individuals except Morris.  *See Lovelace v. Lee*, 472 F.3d 174, 193–94 (4th Cir. 2006) (reasoning that an official-capacity RLUIPA claim would lie only against warden, "who issued the challenged policy as an official of the Commonwealth" and not against the assistant warden, who did not issue the policy).

Accordingly, the court will dismiss all the individual defendants except Morris for lack of personal involvement, but will grant Estes leave to file a second amended complaint.[3]  If he can add

---

[3] Defendants have not specifically sought dismissal of defendants "Green Rock Correctional Center" or VDOC.  The court notes that a state department of corrections, like VDOC, has been held by several courts to be an entity capable of being sued for injunctive relief under RLUIPA.  *E.g.*, *Benning v. Georgia*, 864 F. Supp. 2d 1358, 1360 (M.D. Ga. 2012) (reasoning that the Georgia Department of Corrections is an entity that can be sued for injunctive relief under RLUIPA); *see also Sossamon v. Texas*, 563 U.S. 277, 282 (2011) (looking to § 2000cc-5(4)(A) to conclude that "[s]tates, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law" are proper RLUIPA defendants).  As for "Green Rock Correctional Center," at least one court has held that a facility itself "as a building and not a person" does not fall within the definition of "government" in RLUIPA.  *E.g.*, *Taylor v. Al Cannon Sheriff's Dep't*, No. CV 0:19-1281-TMC-PJG, 2019 WL 2284863, at *2 (D.S.C. May 29, 2019); *cf. McCoy v. See McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) (holding that a jail is not a "person" under § 1983 and also "lacks the capacity to be sued").  Because defendants have not expressly raised or briefed this issue, however, and because Estes has not been given an opportunity to respond, the court will not issue a ruling at this time as to either of these defendants.  Instead, those two defendants will remain in the case.

specific allegations about which person is responsible for which challenged policy, or which individuals could remedy any violation, he may include other individual defendants in his second amended complaint.

The court turns now to defendants' arguments regarding the merits of Estes's claims.

## C.  RLUIPA Claims

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that" the burden is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).  The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion.  *See, e.g.*, *Krieger v. Brown*, 496 F. App'x 322, 324 (4th Cir. 2012); *Adkins v. Kaspar*, 393 F.3d 559, 567 n.32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 760 (7th Cir. 2003).  In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion." *Krieger*, 496 F. App'x at 325 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)).  Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

Also, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Once a plaintiff produces *prima facie* evidence to support the claim that the challenged practice or policy substantially burdens the plaintiff's exercise of religion, the government bears the burden of persuasion on whether the practice or policy is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-2(b). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (quoting *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015)) (internal quotation marks and citations omitted). "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 365 (citations and alterations omitted).

In evaluating whether the least-restrictive-means test is satisfied, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723 (citations omitted) (internal quotation marks omitted). "RLUIPA . . . is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (citation omitted). However, courts should not "mechanically accept" prison administrators' rationale for restricting religious exercise. *Lovelace*, 472 F.3d at 190.

## 1.  Request for Second Yarmulke and Tzitzit

Estes claims that not allowing him a second yarmulke and tzitzit burdens his ability to practice his religion.  His amended complaint lacks specifics as to this claim and, based solely on the allegations in the complaint, he fails to allege a substantial burden.  Thus, the claim must be dismissed, and Morris also will be dismissed, as he is mentioned only with regard to that claim.

Estes's opposition, however, provides additional detail in support of this claim, as discussed *supra*.  As noted, he explains that if he sends either item to be laundered, it is not received back for several days.  Because his faith requires that he not move even six feet without wearing these garments, the policy of only allowing one of each substantially burdens his faith.  He is left with the choice of wearing the same under garment and head covering without ever washing it or having days on which he is not permitted by his faith to move about the prison, pray, or leave his cell.  If he washes the items himself, he still is unable to move or pray while the items are drying.  That reduces the time period he is without them, but it is still a period of "several hours" each time he needs to launder the items.

Because the court believes Estes could plausibly allege a "substantial burden" as a result of being denied a second yarmulke and tzitzit, with the addition of the information in his opposition, the court will allow Estes to file a second amended complaint and will grant him leave to amend this claim to add the more detailed allegations from his opposition.

## 2.  Donations of Food for Passover

As for Estes's claim challenging the policy disallowing donations of food for Passover, the court concludes that he has failed to allege any facts to show that this policy substantially burdens his faith.  Estes acknowledges that he is given "kosher for Passover" food for the eight days of Passover, but he complains that he is given "tuna and boiled eggs" each day and wants to supplement his food.  He admits that supplemental kosher for Passover food is available from the

8

commissary, but states he cannot afford it.  Notably, Estes does not allege that any supplementation is required or important, either for his health or for religious reasons.  And he admits that he is not prevented from celebrating the holiday, nor is he being pressured to modify his behavior and violate his beliefs by any lack of variety in the diet.  Thus, he has not alleged any facts to show that his religious practice was substantially burdened as a result of being prohibited from receiving donated food.  A substantial burden does not result from a prison regulation that merely makes "religious exercise more expensive or difficult" but is not "inherently inconsistent with [a prisoner's] beliefs." *Living Water Church of God*, 258 F. App'x at 739; *see Sullivan v. Younce*, No. 3:15cv710, 2017 WL 655175, at *8 (E.D. Va. Feb. 16, 2017) (invoking *Living Water* standard), *aff'd*, 697 F. App'x 190 (4th Cir. Sept. 11, 2017).

Accordingly, the fact that a policy does not allow him to receive donations of food for Passover from outside Jewish organizations does not violate RLUIPA.  This claim will be dismissed.

### 3.  Donations of Unspecified "Items or Materials"

Estes's claim about not being permitted to receive "items or materials" from outside organizations also fails to state a claim under RLUIPA.  He states that these outside items are "needed in his Jewish practice," but he does not identify what the items are, or how not having them burdens his ability to practice his faith, substantially or otherwise.  This vague claim, too, will be dismissed.

### 4.  Possession of tefillin

Estes's fourth claim is that he is not allowed to personally possess tefillin, and he alleges that his faith requires him to pray daily using tefillin.  VDOC policy allows tefillin to be made available to Estes.  He complains, though, that it is "not always available" because it is stored in the watch commander's office and sometimes is not delivered to him.  It also is unavailable during a

lockdown, per VDOC policy.

Defendants contend that not being able to use tefillin whenever he wants is a mere inconvenience and not a substantial burden, but Estes has alleged that his faith requires him to use tefillin daily and he is not able to.  Thus, the court concludes that he has alleged a "substantial burden" under RLUIPA.  *Cf. Wolcott v. Bd. of Rabbis of N. & S. Cal.*, 738 F. App'x 538, 539 (9th Cir. 2018) (reversing district court decision that concluded inability to use tefillin and other artifacts did not substantially burden plaintiff's faith and remanding for further proceedings as to that claim); *but see Mounts v. Raemisch*, No. 16-CV-02732-RBJ-KLM, 2019 WL 3002941, at *16 (D. Colo. July 10, 2019), *report and recommendation adopted,* No. 16-CV-02732-RBJ-KLM, 2019 WL 4509245 (D. Colo. Sept. 19, 2019) (holding no substantial burden where plaintiff simply alleged, "without any detail" that there were times he was not able to access the tefillin from the unit office when needed)

Because the case is before the court on a motion to dismiss, defendants have not provided their justification for not allowing Estes to possess the tefillin.[4]  Defendants may well be able to show, at summary judgment, that there is "compelling governmental interest" served by the restrictions on tefillin and that the policy "is the least restrictive means of furthering that . . . interest."  42 U.S.C. § 2000cc-1(a).  Indeed, at least some courts have held that policies prohibiting the individual possession (or even prohibiting use altogether) of tefillin by a prisoner did not violate RLUIPA, but reached that conclusion *after* the prison provided the security justifications for those policies.  *E.g.*, *Watson v. Christo*, 837 F. App'x 877, 881–83 (3d Cir. 2020) (holding RLUIPA was not violated by that policy that did not allow plaintiff-prisoner to possess tefillin or even to use it with staff supervision); *Subil v. Sheriff of Porter Cnty.*, No. 2:04-CV-0257 PS, 2008 WL 4690988,

---

[4]  It seems plain, though, that a lengthy leather strap could easily be used as a weapon or for self-harm and that small boxes could be used to smuggle contraband.

at *4 (N.D. Ind. Oct. 22, 2008) (same).

Thus, although the success of this claim may well depend on the justification given for the policy, Estes's tefillin claim is not subject to dismissal at this time and also may be included in any second amended complaint he chooses to file.

## III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss will be granted in part and denied in part.  It will be granted as to the claims arising from the denial of donations from outside groups, including a prohibition on donations for food for Passover, and those claims will be dismissed with prejudice.  Additionally, his claim regarding a second yarmulke and tzitzit is also dismissed, but without prejudice.

If Estes wants to continue to prosecute his claim about the yarmulke and tzitzit, he should file a second amended complaint within thirty days that includes the information from his opposition about this claim and how it affects his religious practice.  His second amended complaint may name Morris and any other defendant who issued the relevant policy or has authority to remedy any violation.  In the meantime, all of the individual defendants shall be dismissed.  The motion to dismiss will be denied as to the tefillin claim, which shall remain in the case against defendants VDOC and Green Rock.

If Estes elects not to file an amended complaint, then the case shall proceed only against VDOC and Green Rock as to the denial of the tefillin.  If that occurs, those two defendants shall file a motion for summary judgment within sixty days of the entry of the attached order.

An appropriate order will be entered.

Entered: July 21, 2023.

/s/ Elizabeth K. Dillon
          Elizabeth K. Dillon
          United States District Judge