CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 09, 2024

LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRUCE A. ESTES, ) | |
|    Plaintiff, ) | Civil Action No. 7:22-cv-00277 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| VIRGINIA DEPARTMENT OF, ) |      Chief United States District Judge |
| CORRECTIONS, *et al.*, ) | |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Bruce Estes, an inmate of the Virginia Department of Corrections, brought this suit *pro se* alleging claims related to the exercise of his Jewish religion. (Compl., Dkt. No. 1.) Pending before the court are motions to dismiss Estes' second amended complaint. (Dkt. Nos. 55, 64, 68.) Plaintiff has also filed a motion to "withdraw" one of the defendants. (Dkt. No. 51.) Plaintiff's motion to withdraw will be granted, defendants' motions to dismiss will be granted, and this matter will be dismissed in its entirety.

I. BACKGROUND

**A. Parties**

Estes is incarcerated at Green Rock Correctional Center (Green Rock), and he was being held there during the time relevant to this lawsuit. The first motion to dismiss was filed by Green Rock, Bernard Morris, Sgt. Pope, and the Virginia Department of Corrections (VDOC). (Dkt. No. 55.) The second motion to dismiss was filed by Keefe Commissary Network, LLC (KCN). (Dkt. No. 64.) The third motion to dismiss was filed by Wendy Brown, Melissa Vandermark, Melissa Welch, Anthony White, Frederick Russell, Jeffery Snoddy, and Melvin Davis. (Dkt. No. 68.) This last group of defendants was added to the lawsuit when plaintiff identified them as members of the Faith Review Committee. (Dkt. No. 52.)

## B. Plaintiff's Allegations

Estes alleges that in 2021 and 2023 members of the Faith Review Committee and Bernard Morris, VDOC Religious Advisor, violated his religious rights when they denied him access to religious headwear, including a Chabad Chassidim Hat, similar to a fedora, a yarmulke/kippa keeper, a second kippah/yarmulka, and a second tzizit. (Sec. Am. Compl. 3, Encl. A, B.) Estes claims that the possession of a second tzizit is a hygiene issue. (*Id.* at 4.) He also alleges that on February 14, 2023, Green Rock, under Sgt. Pope's supervision, issued a "new property menu" that does not list a tzitzit for sale. (*Id.* at 4, Encl. C.)[1]

The second amended complaint then contains an allegation that Estes "hereby reserves all previously argued claims for the claim of the possession of Tefillin,"[2] citing the court's order dated July 21, 2023, and referring to the claims in his first amended complaint. (Sec. Am. Compl. 6.) Estes acknowledges that "Tefillin and access to tefillin is available" where he is housed at Green Rock. (Am. Compl. ¶ 17, Dkt. No. 20-1.) His complaint is that the tefillin is the VDOC's property, stored in the Watch Commander's office, and is "not always available to Estes." (*Id.*) He also complains that he could not take the tefillin with him if he is transferred to another facility in the future. (*Id.*)

Estes's second amended complaint alleges violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), the free exercise clause of the First Amendment, and equal protection. He seeks injunctive relief allowing him to purchase or receive these religious

---

[1] Plaintiff's motion to withdraw asks the court to withdraw his claim against Sgt. Pope because plaintiff discovered that Sgt. Pope has no authority to determine what is sold at commissary. (Dkt. No. 51.) The court will grant this motion.

[2] Tefillin are a set of small boxes with leather straps containing scrolls of parchment inscribed with verses from the Torah. The leather straps are long enough to wrap around the bicep and the forearm several times with enough leather to then wrap one of the fingers. *See* https://en.wikipedia.org/wiki/Tefillin (last visited June 11, 2024).

items. Separately, he seeks $1,000,000 in damages against KCN for violation of the Sherman Act. (Sec. Am. Compl. 7.)

## C. July 21, 2023 Order

The court's previous order granted a motion to dismiss filed by individual defendants, leaving at the time only Green Rock and VDOC as defendants. (Dkt. No. 32.) The order also granted the motion as to all claims except Estes's tefillin claim. (*Id.*) Plaintiff's claims pertaining to donations from outside groups and possessing a second yarmulke and tzitzit were dismissed without prejudice. (*Id.*) The court ordered that plaintiff could file a second amended complaint that includes two claims: (1) the denial of a second yarmulke and tzitzit, and (2) the prohibition on him personally possessing tefillin. (*Id.*) The court stated that if plaintiff "is challenging a specific VDOC policy as to either of these issues, he should identify it specifically and may include as defendants any persons who issued the policy or applied it to him, as well as any persons who have the authority to remedy any violation of RLUIPA." (*Id.*) Plaintiff filed his second amended complaint on July 31, 2023. (Dkt. No. 33.)

## II.  ANALYSIS

### A. Motion to Dismiss

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681

3

(2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Religious Exercise Claims**[3]

Under the Free Exercise Clause of the First Amendment, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). To state a claim for violation of rights secured by the Free Exercise Clause, as a threshold matter, an inmate must demonstrate that he holds a sincere religious belief, and that a prison practice or policy places a substantial burden on his ability to practice his religion. *Carter v. Fleming*, 879 F.3d 132, 139

---

[3] As discussed above, the court's previous order limited plaintiff's second amended complaint to alleging claims related to the denial of a second yarmulke and tzitzit and the prohibition on him personally possessing tefillin. Any claims in the second amended complaint related to the denial of a Chabad Chassidim Hat and a yarmulke/kippa keeper are beyond the scope of the court's order, and those claims will be dismissed without prejudice.

4

(4th Cir. 2018) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Similarly, under RLUIPA, the inmate must show that the challenged policy substantially burdens his exercise of his religion. *See* 42 U.S.C. § 2000cc-2(b); *Holt v. Hobbs*, 574 U.S. 352, 361 (2015). RLUIPA and First Amendment claims proceed in two stages. "At the first stage, which is essentially the same for both claims, the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019). If plaintiff can make that showing, the court proceeds to the second stage, asking whether the prison's policies are justified despite the burden they impose. *Id.* Under RLUIPA, the government has the burden to show that its policies satisfy strict scrutiny; "that is, the policies must represent the least restrictive means of furthering a compelling governmental interest." *Id.* (citing 42 U.S.C. § 2000cc-1(a)). Under the First Amendment, the plaintiff has the burden to show that the policies at issue are not "reasonably related to legitimate penological interests." *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

As discussed above, Estes admits that he has access to and can use a tefillin at Green Rock. In this context, his allegations do not explain how the ban on personal possession places "substantial pressure" on him to "modify his behavior" or "choose between following his religious precepts and forfeiting government benefits." *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012). This arrangement causes no more than an inconvenience, not a substantial burden on plaintiff's religious exercise. "At a minimum the substantial burden test requires a RLUIPA plaintiff to demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Wilson v. United States*, 332 F.R.D. 505, 523 (S.D.W. Va. Aug. 19, 2019); *see also Hoye v. Clarke*, Civil Action No. 7:14cv00124,

2015 WL 3407609, at *5 n.1 (W.D. Va. May 27, 2015) (dismissing free exercise and RLUIPA claims because "the mere inconvenience of purchasing snacks in the commissary" instead of being given a "kosher, diabetic diet" was "not a substantial [burden] but rather an inconvenience on his religious exercise"). Estes argues that he is unable to access the tefillin potentially for days at a time during prison lockdowns (*see* Dkt. Nos. 63, 76), but these sporadic events are not significant enough to establish a substantial burden. *See, e.g.*, *Boughton v. GEO Group Inc.*, 1:20-cv-938 (TSE/JFA), 2023 WL 1928628, at *16 n.15 (E.D. Va. Feb. 9, 2023) (explaining that "federal courts have repeatedly held that such isolated events involving a denial of religiously-mandated food do not give rise to first Amendment or RLUIPA claims") (collecting cases).

Further, Estes's complaint that he might not be allowed access to a tefillin if he were moved to a different facility in the future is mere speculation and does not plausibly state a claim for relief against any of the defendants in this action. The possibility of being denied access to religious materials at a different facility does not suggest any unlawful actions by the defendants who are employed at Green Rock.

Estes has also failed to plausibly allege a substantial burden with respect to his complaints about owning a second yarmulke and a second tzitzit. To the extent that Estes complains about the inconvenience of washing his only yarmulke and tzitzit, this is once again an inconvenience, not a substantial burden. And his concerns about what may happen if his items are lost or damaged is also too speculative to state a plausible claim for relief.

Finally, even if Estes's allegations plausibly alleged that his religious exercise was subject to a substantial burden, he has also failed to plausibly allege that the policies at issue are not the least restrictive means of furthering a compelling governmental interest (RLUIPA claim) or that the policies are not reasonably related to legitimate penological interests.

For these reasons, the court will dismiss plaintiff's RLUIPA and First Amendment free exercise claims.

## C. Equal Protection

To state an equal protection claim, plaintiff must allege that (1) he has been treated differently from others with whom he is similarly situated, and (2) that the unequal treatment was the result of intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Moreover, prisoner equal protection claims are analyzed "in light of the special security and management concerns in the prison system." *Id.* at 655 (citing *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977)). An inmate's constitutional right to be protected from discrimination may be subject to restrictions that are reasonably related to a legitimate penological interest. *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Estes alleges that his equal protection rights were violated because inmates of other faiths were allowed to have more than one religious clothing item, such as Moorish American Moslems, who are allowed to purchase "additional Kufis . . . because the Fez doesn[']t count towards the Kufi count." (Second Am. Compl. 3.) This is insufficient to plausibly allege that plaintiff is similarly situated to inmates of other faiths or that the distinction in treatment was the result of intentional or purposeful discrimination, as opposed to being reasonably related to a legitimate penological interest. *See, e.g.*, *Long v. Vaughan*, NO. 5:14-CT-3117-BO, 2015 WL 12942478 (E.D.N.C. Dec. 17, 2015) (dismissing equal protection claim by prisoner whose Wiccan items were confiscated who "included a passing mention to the permissive use of wooden and stone religious items in Native American religious practice within the prison system" because plaintiff "alleged no facts that he is similarly situated to the Native American religious practitioners he refers to"). In his brief, Estes also notes that female Muslim inmates

7

are allowed three religious scarves and three hijabs, (Dkt. No. 76); however, Estes cannot amend his complaint by argument in his brief. *See So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Moreover, female prisoners at a different facility of a different religion are not similarly situated to plaintiff, a male prisoner, who is requesting different religious items.

Accordingly, the court will dismiss the equal protection claims.

**D. Sherman Act**

Estes has also alleged that KCN and VDOC violated the Sherman Act by conspiring to operate a monopoly due to his inability to purchase a second tzitzit from another source. (Second Am. Compl. 4–5.) Estes does not allege any facts to support his claim that the Sherman Act was violated. *See, e.g.*, *Johnson v. So. Dakota*, 4:17-CV-4026-LLP, 2017 WL 1967362, at *2 (D.S.D. May 10, 2017) (finding that inmate failed to state a claim under the Sherman Act because he presented no facts regarding the prison food provider's "market share or any allegations concerning the relevant market," explaining that the food provider's "market" was not the prison itself). Also, the Sherman Act does not apply to a state agency, *see Parker v. Brown*, 317 U.S. 341, 350–51 (1943), and courts have applied this ruling to preclude a Sherman Act claim against a prison and its commissary contractor. *See Goodrick v. Tewalt*, No. 1:21-cv-487, 2022 WL 4245625, at *1 (D. Idaho Sept. 15, 2022); *Countryman v. Access Securepak Keef Commissary/Network, LLC*, No. 3:12-cv-253, 2012 WL 6962294, at *2–3 (D. Nev. Nov. 2, 2012).

This claim will also be dismissed.

III.  CONCLUSION

The court will issue an appropriate order granting defendants' motions to dismiss and dismissing this matter without prejudice.

Entered: September 9, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge